UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORIG.

JONATHAN STEINBERG,

        Plaintiff,

    v.

LESTER WRIGHT, ROBERT
MACOMBER, BECKY REDDISH,
DR. LANCELOTTI, DENISE BOYD,
NURSE CALDEIRO, DR. PAOLANO,
and DR. R.J. MUELLER,

        Defendants.

JUDGE WOOD

**04 CV 05107**

**COMPLAINT**

**JURY TRIAL DEMANDED**

1.    This is a civil action brought to redress the deprivation by Defendants of rights secured to the Plaintiff by the United States Constitution and the laws of the United States of America. Plaintiff Jonathan Steinberg was placed into the custody of the New York State Department of Correctional Services in November 2000, having been convicted of a Class E felony. Shortly after he entered DOCS custody until March 2002, Mr. Steinberg persistently complained to DOCS medical staff regarding having difficulty breathing, coughing, discharge from his lungs, cognitive difficulties and vision problems. Mr. Steinberg's medical complaints became significantly worse upon his entry into the Woodburne Correctional Facility in May 2001. In March 2002, Mr. Steinberg was finally diagnosed with sarcoidosis after being treated at the Albany Medical Center.

2.    Throughout this time, Mr. Steinberg's medical complaints were completely ignored by DOCS medical staff, including several of the Defendants listed above. As Mr. Steinberg lost a considerable amount of weight and his breathing difficulties became

1

significantly worse, it would be clear to anyone even without medical training that Mr. Steinberg was in serious need of professional medical attention from a specialist. The response of DOCS medical staff was deliberate indifference, at best, with Defendant Lancelotti asking his deathly ill patient if he was "going to sit there and whine all day" in response to Steinberg's complaints, and Defendant Reddish writing Steinberg a disciplinary ticket when he blacked out and demanded adequate medical care. Defendant Wright, having been written to by Steinberg's family members and a physician at the Great Meadow Correctional Facility, also ignored Steinberg's complaints and was indifferent – something that is indicative of Lester Wright's overall management of the DOCS medical system. Additionally, Defendant Mueller was charged by DOCS to review Mr. Steinberg's radiographs, and failed to appropriately diagnose his sarcoidosis as represented on radiographic film. Conveniently, DOCS has "lost" all of Mr. Steinberg's x-rays prior to March 2002.

3.      With this as a background, Plaintiff Jonathan Steinberg, through counsel, does hereby complain and allege as follows:


## JURISDICTION

4.      This Court has jurisdiction over this action under the provisions of 28 U.S.C. §§ 1331, 1341 & 1343 because it is filed to obtain compensatory and punitive damages for the deprivation, under color of law, of the rights of citizens of the United States secured by the Constitution and federal law pursuant to 42 U.S.C. § 1983.

5.     This Court has jurisdiction over a pendent state law medical malpractice claim against Dr. R. J. Mueller under the provisions of the supplemental jurisdiction statute, 28 U.S.C. § 1367. A Certificate of Merit regarding this claim is attached hereto.

6.     Venue is proper under 28 U.S.C. § 1391(e)(2) because the events giving rise to Plaintiff's claims occurred in this judicial district.

7.     A separate action before the New York Court of Claims relative to the events pled herein was filed in March, 2004.

## PARTIES

8.     Plaintiff Jonathan Steinberg is a citizen of the United States and presently resides in Florida. Mr. Steinberg was released from the custody of the New York State Department of Corrections on or around the end of June, 2003.

9.     Defendant Lester Wright was and remains the Medical Director of the New York State Department of Correctional Services, with his principal place of business being Albany County, New York.

10.     Defendant Robert Macomber was and, upon information and belief, remains a physician's assistant employed by the New York State Department of Correctional Services at the Fishkill Correctional Facility, Beacon, New York.

11.     Defendant Becky Reddish was, and, upon information and belief, remains a nurse employed by the New York State Department of Correctional Services at the Woodburne Correctional Facility, Woodburne, New York.

3

12.     Defendant Dr. Lancelotti was, and, upon information and belief, remains a physician employed by the New York State Department of Correctional Services at the Woodburne Correctional Facility, Woodburne, New York.

13.     Defendant Denise Boyd was, and, upon information and belief, remains a nurse administrator employed by the New York State Department of Correctional Services at the Woodburne Correctional Facility, Woodburne, New York.

14.     Defendant Nurse Caldeiro was, and, upon information and belief, remains a nurse employed by the New York State Department of Correctional Services at the Woodburne Correctional Facility, Woodburne, New York.

15.     Defendant Dr. Paolano was, and, upon information and belief, remains a physician employed by the New York State Department of Correctional Services at the Great Meadow Correctional Facility, Comstock, New York.

16.     Defendant Dr. R.J. Mueller was and remains a radiologist, with his principal place of business being Gardiner, New York.

## FACTS

17.  On or about November 24, 2000, Plaintiff Jonathan Steinberg was transferred to the custody of the New York State Department of Correctional Services to serve a term of incarceration after being convicted of a Class E felony offense, Rape in the Third Degree.  In short, Mr. Steinberg had sexual relations with a sixteen year old girl.

18.  Shortly after being admitted to DOCS custody, Plaintiff Steinberg began to experience respiratory and other medical difficulties, including shortness of breath,

4



cough, discharge from lungs, cognitive difficulties, weakness and fatigue. These symptoms became progressively worse over time.

19. The symptoms listed above are the classic symptoms of sarcoidosis, a condition of the lungs that progresses to fibrosis, the formation of scar-like fibrous tissue. It can be difficult to diagnose sarcoidosis, as there is no determinative test for the disease. Instead, it is diagnosis that is made by ruling out other causes to symptoms, and it requires immediate attention by a pulmanologist.

20. The most effective way to treat sarcoidosis is to diagnose the disease early, and treat it before the fibrous deposits grow to the point that they cause permanent damage to the lungs. When in its early stages, the disease is treatable and usually leads to no loss of lung function. It its later stages, however, the disease can lead to loss of function in the lungs, or even death.

21. On or about January 10, 2001, Mr. Steinberg was transferred to the Fishkill Correctional Facility.

22. While at Fishkill, Mr. Steinberg complained of the symptoms of sarcoidosis on numerous occasions to medical staff.

23. On no less than five separate occasions, Mr. Steinberg was seen by Defendant Robert Macomber, a physician's assistant at Fishkill. The last time Mr. Steinberg was seen by Macomber was May 15, 2001, only two days before his transfer to Woodburne Correctional Facility. Despite Steinberg's repeated complaints of respiratory problems to Macomber, and complaints that those problems were worsening, Macomber refused to provide Steinberg with any adequate medical treatment.

5

24. On May 17, 2001, Steinberg was transferred to the Woodburne Correctional Facility.

25. While at Woodburne, Mr. Steinberg complained of the symptoms of sarcoidosis on numerous occasions to medical staff. During his time at Woodburne, Mr. Steinberg's symptoms became dramatically worse, leading to rapid weight loss, black outs, and serious breathing problems.

26. On no less than seven occasions, Mr. Steinberg was seen by Defendant Becky Reddish, a nurse at Woodburne. Despite Steinberg's repeated complaints of respiratory problems to Reddish, and complaints that those problems were worsening, Reddish refused to provide Steinberg with any adequate medical treatment.

27. One occasion on which Mr. Steinberg saw Defendant Reddish deserves special mention. On June 25, 2001, Mr. Steinberg suffered a black out and reported to emergency sick call. At that time, Defendant Reddish again refused to provide him with appropriate medical care and called him a "malingerer." When Mr. Steinberg protested, Defendant Reddish issued Mr. Steinberg a disciplinary ticket for making a false statement when reporting to sick call. Defendant Caldeiro also signed this disciplinary complaint.

28. This disciplinary ticket resulted in Mr. Steinberg being placed in the Special Housing Unit for a period of forty-five days, and his transfer to a maximum security prison.

29. Mr. Steinberg later filed a successful Article 78 proceeding against the Department of Correctional Services, with the New York Supreme Court expunging the disciplinary ticket from his record.



30. On no less than five separate occasions, Mr. Steinberg was seen by Defendant Dr. Lancelotti, a physician employed at Woodburne. The last time Mr. Steinberg was seen by Lancelotti was, upon information and belief, July 12, 2001. Despite Steinberg's repeated complaints of respiratory problems to Lancelotti, and complaints that those problems were worsening, Lancelotti refused to provide Steinberg with any adequate medical treatment. On one occasion in response to Steinberg's complaints, Dr. Lancelotti asked his seriously ill patient if he was "going to sit there and whine all day."

31. On no less than two separate occasions, Mr. Steinberg was seen by Defendant Denise Boyd, the nurse administrator at Woodburne. Upon information and belief, Ms. Boyd was also made aware of Steinberg's complaints by her subordinate nurses at Woodburne, and by letters from Steinberg's attorney and family members. Boyd last treated Steinberg on or around August, 2001. Despite Steinberg's repeated complaints of respiratory problems to Boyd, and complaints that those problems were worsening, Boyd refused to provide Steinberg with any adequate medical treatment.

32. On no less than two separate occasions, Mr. Steinberg was seen by Defendant Nurse Caldeiro, a nurse at Woodburne. The last time Mr. Steinberg was seen by Caldeiro was August 25, 2001. Despite Steinberg's repeated complaints of respiratory problems to Caldeiro, and complaints that those problems were worsening, Caldeiro refused to provide Steinberg with any adequate medical treatment.

33. On or about October 10, 2001, Mr. Steinberg was transferred to the Great Meadow Correctional Facility in Comstock, New York.

34. While at Great Meadow, Mr. Steinberg repeatedly complained about his symptoms to medical staff and others.

7

35. On no less than four separate occasions, Mr. Steinberg was seen by Defendant Dr. Paolano, a physician at Great Meadow. Despite being presented with a seriously ill patient in great respiratory distress, Dr. Paolano waited nearly two months to provide Mr. Steinberg with adequate medical care, namely evaluation and treatment by a specialist.

36. On or about March 8, 2002, after finally receiving a consultation with a specialist, Dr. Scott Beegle at Albany Medical Center, Mr. Steinberg was affirmatively diagnosed with sarcoidosis by biopsy and admitted to Albany Med's intensive care unit. It was at this time that Mr. Steinberg was finally made aware of his suffering from sarcoidosis, and the fact that he had been consistently misdiagnosed and/or had his condition ignored over the course of a fifteen month period.

37. Upon information and belief, the medicine Mr. Steinberg was prescribed for the treatment of Hepatitis C (Rebetron – the combination of Ribivirin and Interferon) has been linked to the incidence of Sarcoidosis.

38. Prior to this time, Mr. Steinberg's x-rays were sent for review by Dr. R.J. Mueller, who failed to appropriately review these x-rays and appropriately diagnose Mr. Steinberg's medical problems. Specifically, the progression of Mr. Steinberg's x-rays over time revealed that he was experiencing the significant enlargement of fibrous growths in his lungs, which should have indicated that there was a problem. Dr. Mueller's reports do not reflect as much. The New York State Department of Correctional Services has conveniently "lost" Mr. Steinberg's x-rays for the period prior to March 2002.

39.  Upon information and belief, Defendant Lester Wright received letters from Mr. Steinberg's family members complaining about his medical treatment while in DOCS custody, and specifically detailing his symptoms, prior to his diagnosis at Albany Medical Center.  Dr. Wright also, upon information and belief, received a series of correspondence from Defendant Paolano about Mr. Steinberg's situation, with Paolano detailing Steinberg's condition.  Upon information and belief, Dr. Wright took no action in response to these letters other than to send a canned letter to Steinberg's family stating that Steinberg, with Stage III Sarcoidosis that was not being treated by a pulmanologist, was receiving appropriate medical care.

40.  Upon information and belief, the New York State Department of Correctional Services has persistently maintained an "HMO" approach to providing medical care to its inmates, refusing, on the basis of budgetary considerations, to allow them access to specialists when necessary.

41.  Upon information and belief, the New York State Department of Correctional Services has no internal mechanisms with which to monitor the medical care and complaints of inmates, or the misconduct/indifference of its medical providers.

42.  Plaintiff affirmatively maintains that he was subject to a continuous course of treatment and indifference at the hands of all Defendants.

43.  At the conclusion of a prolonged period of neglect and indifference from a series of DOCS officials and Dr. Mueller, Mr. Steinberg's prognosis was, and is, grim. Mr. Steinberg presently suffers from Stage III sarcoidosis, with the sarcoidosis causing permanent damage to his lungs and to his lung capacity.  It is generally recognized that sarcoidosis, once it reaches a certain point in the progression of the disease, has a

9

permanent impact on the function of the lungs and other organs.  After nearly fifteen months of indifference and being refused adequate medical treatment, that is exactly what has happened to Mr. Steinberg.  His condition is permanent, and was also completely avoidable.

44.  The individual Defendants, with the exception of Mueller, and each of them, acted within the scope of their authority to act as public servants for the State of New York and the New York State Department of Correctional Services.

45.  During all times mentioned in this Complaint, the individual Defendants, with the exception of Mueller, were acting under color of state law, that is, under color of the Constitution, statutes, laws, charter, ordinances, rules, regulations, customs and usages of the State of New York.

46.  The individual Defendants, with the exception of Mueller, knew, or should have known, that their conduct violated the clearly established constitutional rights of Plaintiff Jonathan Steinberg.

### CAUSES OF ACTION

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS
WRIGHT, MACOMBER, REDDISH, LANCELOTTI, BOYD, CALDEIRO AND
PAOLANO**

**Violation of Constitutional Rights Under Color of State Law
-- Deliberate Indifference to Serious Medical Needs --**

47.  Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 46.

48.  The Eighth Amendment to the United States Constitution precludes prison officials from willfully denying medical treatment to an inmate with serious medical needs, as such conduct would represent cruel and unusual punishment.

49. The actions of the Defendants listed above, provided in the factual recitation of this complaint, violated Jonathan Steinberg's rights under the United States Constitution. In short, it was not objectively reasonable for these Defendants to ignore Mr. Steinberg's serious medical problems and refuse to send him to an outside hospital and/or pulmanologist who could have properly diagnosed his symptoms. In fact, the actions of the Defendants listed above demonstrate a deliberate indifference to Mr. Steinberg's serious medical needs.

50. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that their actions were undertaken under color of state law.

51. As a direct and proximate result of the unconstitutional acts descried above, Plaintiff has been irreparably injured.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT BECKY REDDISH AND NURSE CALDEIRO

#### Violation of Constitutional Rights Under Color of State Law
#### -- Violation of the Right to Freedom of Speech --

52. Plaintiff incorporates by reference and realleges each and every allegation stated in paragraphs 1 through 51.

53. The First Amendment to the United States Constitution precludes prison officials for punishing an inmate simply because he verbally requests to be provided with medical treatment for a serious and life threatening medical condition.

54. The actions of Defendants Becky Reddish and Nurse Caldeiro detailed above violated Plaintiff Jonathan Steinberg's rights under the United States Constitution. In short, it was not objectively reasonable for Becky Reddish and Nurse Caldeiro to write

Mr. Steinberg a disciplinary ticket because he reported to sick call and requested medical treatment after blacking out.

55.   Ms. Reddish and Nurse Caldeiro's conduct was motivated by bad faith and malice, in that they believed that the seriously sick man that presented himself to them was a "malingerer," and deserved to punished for persistently complaining about was where serious and severe medical problems.

56.   This conduct on the part of Defendants Becky Reddish and Nurse Caldeiro represents a violation of 42 U.S.C. § 1983, given that their actions were undertaken under color of state law.

57.   As a direct and proximate result of the unconstitutional acts described above, Plaintiff has been irreparably injured.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT LESTER WRIGHT

### Failure to Implement Polices to Avoid Constitutional Deprivations and Failure to Train and Supervise Employees under Color of State Law

58.   Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through54.

59.   Defendant Lester Wright is the Chief Medical Officer for the New York State Department of Correctional Services.

60.   Upon information and belief, Defendant Lester Wright is responsible to establish policies and treatment protocols to be utilized by medical staff of the Department of Correctional Services.

61.   Upon information and belief, the New York State Department of Correctional Services repeatedly, for budgetary reasons, refuses to have inmates evaluated by outside

medical personnel, regardless of their individual need. In effect, the New York State Department of Correctional Services, under Dr. Wright's guidance, has instituted a custom and practice of allowing inmates to be deprived of medical treatment while under their supervision, largely to save money.

62. Additionally, the New York State Department of Correctional Services has no mechanisms in place to monitor the medical complaints of inmates, or the malpractice/indifference of the physicians it employees. Dr. Wright and others have demonstrated deliberate indifference to the needs of individuals under their supervision by failing to adequately hire, screen, train and supervise medical employees of the New York State Department of Correctional Services.

63. The policies, procedures and practices of Defendant Wright violated the rights of Jonathan Steinberg under the Eighth Amendment to the United States Constitution.

64. This conduct on the part of Defendant Wright also represents a violation of 42 U.S.C. § 1983, given that their actions were undertaken under color of state law.

65. As a direct and proximate result of the unconstitutional acts described above, Plaintiff has been irreparably injured.

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT R.J. MUELLER**

**Violation of State Law**
**-- Medical Malpractice --**

66. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 65.

13

67. Defendant Mueller was charged with reviewing Mr. Steinberg's x-rays, with their being forwarded to him by the New York State Department of Correctional Services. Defendant Mueller improperly read these radiographs, and failed to identify the obvious signs of sarcoidosis contained therein.

68. The actions on the part of Defendant Mueller represent medical malpractice under the laws of the State of New York.

69. The New York State Department of Correctional Services has conveniently "lost" these x-rays.

70. As a direct and proximate result of the unconstitutional acts described above, Plaintiff has been irreparably injured.

### DEMAND FOR PUNITIVE DAMAGES

71. The actions of all Defendants, with the exception of Defendant Mueller, described herein were extreme and outrageous, and shock the conscience of a reasonable person. Consequently, an award of punitive damages is appropriate to punish the Defendants for their cruel and uncivilized conduct.

### DEMAND FOR TRIAL BY JURY

72. The Plaintiff hereby demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Honorable Court grant him the following relief:

A.    A judgment against all Defendants except Mueller, jointly and severally, on Plaintiff's First Cause of Action, for compensatory damages.

B.    A judgment against Defendants Reddish and Caldeiro, jointly and severally, on Plaintiff's Second Cause of Action, for compensatory damages.

C.    A judgment against Defendant Wright on Plaintiff's Third Cause of Action;

D.    A judgment against Defendant Mueller on Plaintiff's Fourth Cause of Action;

E.    A judgment against Defendant Wright awarding punitive damages to the Plaintiff;

F.    A judgment against Defendant Macomber awarding punitive damages to the Plaintiff;

G.    A judgment against Defendant Reddish awarding punitive damages to the Plaintiff;

H.    A judgment against Defendant Lancelotti awarding punitive damages to the Plaintiff;.

I.    A judgment against Defendant Boyd awarding punitive damages to the Plaintiff;

J.    A judgment against Defendant Caldeiro awarding punitive damages to the Plaintiff;

K.    A judgment against Defendant Paolano awarding punitive damages to the Plaintiff;

L.     A monetary award for attorneys' fees and the costs of this action, pursuant

to 42 U.S.C. § 1988.

M.    Any other relief that this Court finds to be just, proper and equitable.

Respectfully submitted by:

Dated: June 25, 2004

Jason Rozger, Esq. (JR 8986)
BEREN BAUM MENKEN BEN-ASHER
    & BIERMAN
80 Pine Street, 32nd Floor
New York, NY 10005
Telephone: 212.509.1616
Telecopier: 212.509.8088
Electronic Mail: jrozger@bmbblaw.com


Elmer Robert Keach, III, Esquire
(Motion for Permanent Admission to
be filed)
One Steuben Place
Albany, NY 12207
Telephone: 518.434.1718
Telecopier: 877.471.3092
Electronic Mail: bobkeach@keachlaw.com

**ATTORNEYS FOR PLAINTIFF
JONATHAN STEINBERG**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN STEINBERG, | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| LESTER WRIGHT, *et. al.*, | : |
| | : |
| Defendants. | : |

## CERTIFICATE OF MERIT REGARDING MEDICAL MALPRACTICE CLAIMS

**Elmer Robert Keach, III,** an attorney for the Plaintiff, declares that: I have reviewed the facts of this case with a physician who is licensed to practice medicine in, at a minimum, the State of New Jersey who I reasonably believe is knowledgeable in the relevant issues involved in this action, and I have concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of this action regarding medical malpractice against Defendant Dr. R.J. Mueller.

Respectfully submitted by,

Dated: June 24, 2004
        Albany, New York

Elmer Robert Keach, III, Esquire
(Motion for Permanent Admission to be Filed)
One Steuben Place
Albany, NY 12207
Telephone: 518.434.1718
Electronic Mail: bobkeach@keachlaw.com